# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE 2, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 3:23-cv-00 582 |
| | ) Judge Aleta A. Trauger |
| JIMMIE ALLEN *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM

Before the court is plaintiff Jane Doe 2's Motion to Dismiss [defendant] Jimmie Allen's Counterclaim for Conversion. (Doc. No. 15.) As set forth herein, the motion will be denied.

## I. PROCEDURAL HISTORY

Plaintiff Jane Doe 2 initiated this lawsuit against Jimmie Allen, Charles Hurd, Aadyn's Dad Touring, Inc. ("ADT"), and "John Does 1–100" in June 2023. (Doc. No. 1 ("Complaint").) This court's jurisdiction is premised upon complete diversity of citizenship, and the Complaint sets forth various state law claims arising from an encounter between Allen and the plaintiff that began as a consensual sexual encounter at a hotel in Las Vegas, Nevada and allegedly morphed into a non-consensual encounter when Allen failed to respect the plaintiff's boundaries. The plaintiff also alleges that Allen, without her knowledge or consent, videorecorded the entire encounter. She states that, when she realized Allen's phone had recorded the event, she took the phone without waking him (being allegedly unable to wake him) and returned to her home in California. She turned the phone into her local police department. Officers there told her they would report the incident to Las Vegas police. (Complaint ¶¶ 31–43.)

The Complaint has not been served on defendant Charles Hurd, and the plaintiff has never identified any of the "John Doe" defendants. She did successfully serve Allen and ADT, however. These defendants, through counsel, filed an Answer denying liability and disputing many of the facts as alleged by the plaintiff. (Doc. No. 11, at 1–14.) They specifically allege that the encounter was consensual, that Allen fully respected the plaintiff's sexual boundaries, and that the plaintiff both knew about and consented to his videorecording the encounter with his cell phone. They admit that the plaintiff left the hotel room while Allen was sleeping and that she took his cell phone with her.

Besides denying the plaintiff's allegations, Allen also brought a Counterclaim for conversion against the plaintiff. (Doc. No. 11, at 14–18 ("Counterclaim").) In support of the Counterclaim, Allen alleges that, before initiating sexual contact, he asked Jane Doe if it was "OK for him to set up his camera phone to record their encounter" and she agreed. (Counterclaim ¶¶ 24, 25.) He set up the camera phone "in plain view at the foot of the bed." (*Id.* ¶ 26.) The two engaged in sex in view of the camera phone, and, afterward, Allen fell asleep. When he woke up, he found that Jane Doe had left the hotel room and taken his camera phone with her. He attempted to call and text her using a different phone. She responded by text, stating that she "did not approve of him recording their encounter." (*Id.* ¶ 31.) He reminded her that she had agreed to his recording the event with his phone. (*Id.*) He denied her request to provide the cell phone passcode so that she could permanently delete the video, but he offered to delete the video himself to her satisfaction if she would bring the phone back to him. She declined that offer. He alleges "upon information and belief" that she then returned to California with his phone but "eventually mailed [it] to the Las

Vegas Police Department." (*Id.* ¶¶ 35–36.) Allen has never recovered possession of his phone. (*Id.* ¶ 37.)[1]

Specifically with respect to his conversion claim, Allen asserts that Jane Doe took his phone without his permission, thus "wrongfully exert[ing] a distinct act of dominion over [his] personal property." (*Id.* ¶ 41.) This act was purportedly in denial of, inconsistent with, or in derogation of his rights in the property and was neither justified nor excused by law. (*Id.* ¶¶ 42–43.)

The plaintiff now seeks dismissal of the Counterclaim. She has filed a Memorandum of Law in support of the Motion to Dismiss. (Doc. No. 16.) Allen, through counsel, filed a Response in opposition to the motion, and the plaintiff filed a Reply. (Doc. Nos. 18–19.)

## II. LEGAL STANDARD

"Courts use the same standard in ruling on a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) as they do on a motion to dismiss a complaint." *D.R.E. Med. Grp., Inc. v. NorVap Int'l, Ltd.*, No. 3:21-CV-00372-GNS-RSE, 2022 WL 2345923, at *1 (W.D. Ky. June 29, 2022) (quoting *Baxter Bailey & Assocs., Inc. v. Powers & Stinson, Inc.*, No. 14-3012, 2015 WL 13091368, at *2 (W.D. Tenn. July 10, 2015)); *see also United Food & Commercial Workers Union-Employer Pension Fund v. Rubber Assocs., Inc.*, 812 F.3d 521, 524 (6th Cir. 2016).

Under that standard, the court must determine "whether the [counterclaim] states a claim for relief that is plausible, when measured against the elements of [the] claim" at issue. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). In other words, to withstand a motion to dismiss, the Counterclaim "must

---

[1] The record does not reveal where the phone is now.

make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In reviewing a motion to dismiss, the court must "accept all well-pleaded factual allegations of the [counterclaim] as true and construe the [counterclaim] in the light most favorable to the [claimant]." *United Food & Commercial Workers*, 812 F.3d at 524 (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012)) (alterations in original).

### III. ANALYSIS

#### A. Choice of Law

State substantive law applies to state law claims in federal court. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). When there is no dispute as to which state's substantive law applies, "the court need not conduct a choice-of-law analysis *sua sponte*." *Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, 822 (W.D. Tenn. 2020) (citing *GBJ Corp. v. E. Ohio Paving Co.*, 139 F.3d 1080, 1085 (6th Cir. 1998)).

The plaintiff here asserts that, because the events at issue took place in Nevada, under Tennessee's choice-of-law principles, Nevada substantive law applies. (Doc. No. 16, at 4.) In his Response, Allen states in a footnote that, for purposes of his Response, he "does not object to the application of Nevada law to [his] conversion claim" but "reserves the right to raise future objections." (Doc. No. 18, at 5 n.1.) Because Allen does not dispute the application of Nevada law to his conversion claim, the court presumes at this juncture that Nevada law applies.

#### B. Elements of Conversion Under Nevada Law

The Nevada Supreme Court has defined the tort of conversion as "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *M.C. Multi-Family*

*Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 542 (Nev. 2008) (quoting *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000)). "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Id.* at 542–43 (footnoted citation omitted). "Whether a conversion has occurred is [generally] a question of fact for the jury." *Id.* at 543 (footnote omitted).

### C. The Merits of Plaintiff's Motion

The plaintiff argues that Allen fails to allege facts showing that she wrongfully exerted dominion over his cell phone, because, under Nevada law, "[t]aking disputed property for the purpose of turning it over to the courts or law enforcement for investigation or adjudication is not conversion." (Doc. No. 16, at 5 (citing *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958)).) She asserts that Allen fails to allege facts that plausibly establish conversion, because (1) he acknowledges that the plaintiff turned over his phone to the police; and (2) he alleges "contradictory facts" as to whether she had a legitimate right to the video recording contained in the cell phone. (Doc. No. 19, at 1.) She also asserts that, under the Nevada Constitution, victims of crimes are protected from intimidation and harassment. (Doc. No. 16, at 8 (citing Nev. Const. art. I, § 23.) Allen argues generally that the facts are disputed and that the plaintiff's arguments for dismissal amount to nothing more than an affirmative defense entirely premised upon the assumption that her version of facts is the true one.

As set forth above, for purposes of the Motion to Dismiss, the court must accept as true the *defendant's* factual allegations in the Counterclaim. According to Allen, the sexual encounter was entirely consensual, and the plaintiff both knew about and consented to his recording the encounter on his phone. Although the plaintiff now asserts that Allen alleges *both* that she consented to the recording and that she did not consent (Doc. No. 19, at 4), the court does not read the Counterclaim thus. Rather, Allen clearly alleges that he asked the plaintiff if he could record and she consented.

(Counterclaim ¶¶ 24–25.) He also states that the camera/phone was in plain view at the foot of the bed. He alleges that she *later* told him she did not "approve" of his recording the encounter—not that she had not consented. (*See id.* ¶ 31 ("She responded that she did not approve of him recording their encounter. Allen reminded her that she consented to the recording").) In other words, Allen alleges that the plaintiff revoked her consent after the fact—and after she had taken his cell phone. He offered to delete the video to her satisfaction, but she refused to bring the phone back to him, and he refused to divulge the phone's passcode to allow her to do it (which would also have allowed her to access everything else stored in the phone). Instead, she left the state.

The cases cited by the plaintiff do not stand for the proposition that her alleged intent to turn the phone over to police negates the possibility that she can be liable for conversion. For one thing, the plaintiff does not allege that her intent when she took the phone was to turn it over to police as evidence of a crime, and the fact that she waited until after she had returned to California to take it to the police would permit a jury to find that she did not develop that intention until later, if ever. And even if that was her intent all along, as set forth above, "[c]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *M.C. Multi-Family Dev.*, 193 P.3d at 542–43. And, more to the point, the question of whether a conversion has occurred is generally "a question of fact for the jury." *Id.* at 543 (citations omitted).

In addition, in *Wantz*, upon which the plaintiff relies, the question posed was "whether the assertion of a third-party claim against property held under attachment and the accepting of possession of such property can be held to constitute conversion when it is subsequently determined that the claimant was not the owner." 326 P.2d at 413. In that case, "the assertion of the third-party claim was but resort to the judicial process for determination of a title in dispute."

*Id.* at 414. The court held that, absent some showing of malice, "it is not wrongful or tortious to engage in a dispute as to title nor to submit that dispute to the courts. Courts exist for the purpose of resolving disputes. One does not become a tort-feasor merely by having judgment entered against him in an action brought in good faith." *Id.*

That is not what happened here. There is no dispute as to who owns the phone. There is a dispute of fact, not about who "owns" the video, but about whether the plaintiff consented to the recording. If a jury finds that the plaintiff validly consented to the recording but later revoked her consent and took the phone while the defendant was sleeping, the jury could find that she "wrongfully exerted" "a distinct act of dominion" over Allen's phone "in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *M.C. Multi-Family Dev.*, 193 P.3d at 542. Likewise, the plaintiff's citations to Nevada criminal law, the Nevada Constitution, and Nevada public policy protections for victims of crime are unavailing and irrelevant at this point, because there is a fact question as to whether she was the victim of a crime.

To be sure, if the plaintiff establishes that she did not consent to the recording and took the phone with the intention of turning it over the police as evidence of a crime—including the crime of sexual assault—she may establish a defense to the Counterclaim.[2] But she has not, at this juncture, established a basis for dismissal of the Counterclaim.

## IV. CONCLUSION

For the reasons set forth herein, the court will deny the Motion to Dismiss.

---

[2] The videorecording of the sexual encounter appears at this point to constitute important evidence that could effectively prove or disprove the plaintiff's claim regarding her lack of consent to the continuation of the sexual encounter, as well as proof of where the phone was set up and whether the plaintiff knew that the encounter was being recorded.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge