UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JANE DOE 2, | ) | |
| Plaintiff, | ) ) ) | No. 3: 2023-cv-00582 |
| v. | ) ) | JURY TRIAL DEMANDED |
| JIMMIE ALLEN, AADYN'S DAD TOURING, INC., CHARLES HURD, and JOHN DOES 1-100 | ) ) ) ) ) | JUDGE ALETA A. TRAUGER |
| Defendants. | ) | |

## VERIFIED FIRST AMENDED COMPLAINT

Plaintiff Jane Doe 2 ("Plaintiff"), by and through her attorneys, for her Verified First Amended Complaint against Defendants Jimmie Allen ("Allen"), Charles Hurd ("Charles" or "Hurd"), Aadyn's Dad Touring, Inc. ("ADT"), and John Does 1-100, alleges upon her personal knowledge as follows:

## BACKGROUND

1. Jane Doe 2 met Defendant Jimmie Allen on or about May 1, 2022, on a plane trip to Nashville, Tennessee. While she didn't know who Allen was, Allen's bodyguard Charles Hurd followed her into the airport and told her that Allen wanted her phone number.

2. Over the next several months, Plaintiff and Allen spoke, engaged in Facetime conversations, and exchanged text messages several times per day, during which time Allen led Plaintiff to believe he was currently separated from his wife, he loved Plaintiff, he wanted to marry her and have children with her, and he thought she would be a good stepmother for his children.

3. In July 2022, believing they had a future together based on Allen's statements, Plaintiff agreed to meet Allen in Las Vegas, where Allen was scheduled for several public appearances.

4. On their first and only night out together in Vegas, even though Allen assured Plaintiff he would reserve her a separate hotel room, Allen and Hurd enticed Plaintiff to come to Allen's hotel room while they waited for her room.

5. There, Allen ejaculated inside Jane Doe 2 without a condom, even though she had told him she was not on birth control and he should pull out. Then, after Allen had passed out and Jane Doe 2 was dressed and trying to figure out where to go, she discovered that Allen had surreptitiously and, without her consent, placed his cell phone in the closet facing the bed and had been videotaping the entire event.

6. After Jane Doe 2 could not wake Allen to force him to delete the recording, Jane Doe 2 took the cell phone, turned it into the police when she returned home, and made a police report.

7. Allen's sexual assault and surreptitious recording of his assault of Plaintiff has caused her to suffer extreme emotional distress, including anxiety and depression, and has affected Plaintiff's relationships and ability to trust.

8. Plaintiff brings this lawsuit under Nevada common law for, *inter alia,* assault, battery, invasion of privacy, infliction of emotional distress, and negligent failure to warn, and under Tennessee law for negligent hiring, supervision, and training.

**JURISDICTION AND VENUE**

9. Diversity jurisdiction exists under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, and plaintiff is a citizen of a different state (California) than all defendants (Tennessee and North Carolina).

10. Venue is proper in this District under 28 U.S.C. § 1391 because, *inter alia*, Defendants are subject to personal jurisdiction in this District. At the time these events occurred, which are the subject of this lawsuit, all Defendants were residents of this District.

## PARTIES

11. Plaintiff is a citizen of the United States and resident of Sacramento County, California.

12. Defendant Jimmie Allen is a citizen of the United States and resident of Nashville, Tennessee.

13. Aadyn's Dad Touring, Inc. ("ADT") is a Tennessee corporation with its principal place of business located in Nashville, Tennessee. On information and belief, at all times relevant to this complaint, ADT employed Charles Hurd, Allen's personal bodyguard and security detail.

14. Charles Hurd ("Hurd") is a citizen of the United States and resident of Salisbury, North Carolina.

15. John Does 1-100 are defendants, whose identities are currently unknown to Plaintiff, who facilitated and encouraged Jimmie Allen's conduct and failed to warn Plaintiff or otherwise prevent the sexual assault and invasion of privacy.

## FACTS

16. On or about May 1, 2022, Plaintiff and her friends were on a flight from Sacramento, California, to Nashville, Tennessee. During the flight, Defendant Jimmie Allen struck up a conversation with Plaintiff and her friends. At that time, Plaintiff did not know Allen's identity.

17. As they exited the plane, a man traveling with Allen approached Plaintiff and identified himself as "Charles." On information, the person who identified himself as Charles is Charles Hurd, who is or was employed by ADT.

18. Charles asked Plaintiff if she knew who Allen was. He explained that Allen was Jimmie Allen, a country music artist. He said that Allen wanted Plaintiff's phone number and suggested they could meet that evening in Nashville.

19. Plaintiff and her friends met Allen that evening in Nashville for a fun evening on the town. Allen explained that he was leaving to go on tour but told Plaintiff he would keep in touch with her.

20. Over the next two months, Allen and Plaintiff spoke via FaceTime or exchanged text messages several times per day. Over time, Allen expressed his love for her and told her he could see a future together. He told her he wanted to have children together and that he could see she would make a good stepmother for his children.

21. Plaintiff inquired on several occasions about Allen's wife, but Allen assured her that he and his wife were separated.

22. After months of long-distance talking, Plaintiff agreed to meet Allen in Vegas, where he was scheduled for several public appearances in July 2022. Allen offered to pay for her trip. However, Plaintiff insisted that she pay for her own plane ticket and requested that Allen book her a separate hotel room. He agreed.

23. When she arrived in Vegas, she was picked up by a car that she understood had been arranged by Charles. The car brought her to the event where Allen was appearing and then to a second official appearance.

24. While Allen was fulfilling his duties, Plaintiff spent time with Charles, who was also attending the appearances. Charles identified himself as an air marshal and displayed two guns he was carrying. Charles vouched for Allen, including by telling Plaintiff how Allen felt about her. Believing Charles was a federal air marshal as he represented, Charles made Plaintiff feel comfortable about being in Vegas with Allen.

25. During the approximately eight hours of official appearances, Allen introduced Plaintiff as his girlfriend, repeatedly expressed his desire to have a future with her and expressed that he wanted to have children with her.

26. After the second appearance, Charles and Allen brought Plaintiff to the Cosmopolitan Hotel. When they arrived, Allen told Plaintiff to come up to his room, where they were joined by Charles. They told her she could hang out there while they arranged for her room, and she could enjoy the view from Allen's room while she waited.

27. Plaintiff accompanied Allen and Charles to Allen's suite. She felt comfortable and safe because Charles was there and because Allen told her they were arranging for her separate room. Charles explained he was staying in the room next door.

28. Allen's suite consisted of a separate living room and a bedroom. The suite also included an outdoor balcony.

29. Allen invited Plaintiff to sit on the balcony with him. Charles excused himself to go to his room.

30. While Allen and Plaintiff were sitting on the balcony, Allen told Plaintiff that he loved her, he could see a future with the two of them together, and that he thought she would be a great stepmother to his children.

31. After Plaintiff and Allen kissed on the balcony, Allen asked Plaintiff to join him inside the bedroom. However, he told her to wait, to face and hold onto the balcony rail, and to keep her back to the door. He warned her not to peek. Hearing Allen rustling around inside the suite, Plaintiff thought Allen was being romantic and would surprise her with champagne or rose petals. Plaintiff waited approximately five minutes with her back turned towards the door until Allen returned to the balcony.

32. Plaintiff then willingly joined Allen in the bedroom.

33. However, at no time did Allen disclose that he intended to or was video recording their sexual encounter, nor did he ask Plaintiff if she consented to him video recording their sexual encounter. There were also no visible signs of cameras or recording devices in the hotel suite.

34. Moreover, Plaintiff had told Allen she was not on birth control and repeatedly told him she did not want him to ejaculate inside her. He told her he would respect her request.

35. Yet, as their encounter progressed, Allen penetrated Plaintiff during sex with his penis and without a condom, and ejaculated inside her.

36. After Allen ejaculated, he passed out on the bed.

37. Very upset that Allen did not pull out, Plaintiff determined that she would need to order Plan B because she did not want to get pregnant. She was distressed that Allen had lied to her and had not listened to her direction to stop having sex before he ejaculated.

38. After Allen passed out and it was clear that he was not going to wake up and provide her with a separate hotel room as she had requested, Plaintiff got dressed and gathered her belongings.

39. However, even though Allen and Hurd had promised her a separate bedroom, neither had provided her with a key or location. She did not know where she was supposed to go, so she sat down on the bed fully clothed, hoping that Allen would wake up or Hurd would come back to provide her with a key to her room.

40. While sitting on the bed fully clothed, she looked at the television (which was turned on) next to the closet. The closet door was a sliding door with slats and was partially open. She was surprised to see a cell phone sitting in the closet angled towards the bed. At first, she thought the cell phone was charging. Then, she realized it was focused on the bed, recording the scene.

41. Plaintiff panicked when she discovered that Allen had recorded her undressing and had recorded their sexual encounter and his assault on her even after she told him not to ejaculate inside of her. She had not consented to being recorded and did not know what he intended to do with the recording.

42. Plaintiff stood up from the bed, grabbed the phone, stopped the recording, and hit delete. However, she could not further access the phone without his passcode and knew that the video would still exist in his deleted items folder.

43. Plaintiff attempted to wake Allen up to force him to input his passcode and delete the recording, but she could not wake him up.

44. Crying, shaking, and in a panic, Plaintiff took the phone with her. With nowhere to go, Plaintiff called her friends (from her personal cell phone) while sobbing. Plaintiff told her friend "Jill Doe" that she was not safe, and that she was trying to get away from a man. Her friend Jill Doe called a different hotel, disclosed the assault, and the hotel arranged for a room for Plaintiff. Plaintiff traveled alone to the new hotel. There, the hotel personnel made Plaintiff

7

feel safe, reassured her that her abuser would not be able to physically find her, and provided her with a room.

45. Plaintiff booked a new flight home and, upon return, took Allen's phone to her local police department. There, Plaintiff reported the assault and the surreptitious recording. The local police department told her they would report the incident to the Las Vegas Metropolitan Police.

46. As a result of Defendants' actions, Plaintiff has suffered and continues to suffer extreme emotional distress.

## CAUSES OF ACTION
## COUNT I
## BATTERY
## (AGAINST JIMMIE ALLEN)

47. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

48. Plaintiff brings Count I under Nevada law because the battery occurred in Las Vegas, Nevada.

49. Allen intended to commit an intentional and offensive touching of a person who has not consented to the touching.

50. Allen did commit an intentional and offensive touching of Plaintiff by ejaculating inside of her without a condom when Plaintiff did not consent to him doing so. In fact, Allen had promised Plaintiff he would pull out before ejaculating but did not do so. .

51. Allen's battery of Plaintiff caused harm, including physical, mental, and/or emotional harm.

52. As a result of Allen's conduct, Plaintiff suffered damages.

8

## COUNT II
## ASSAULT
### (AGAINST JIMMIE ALLEN)

53. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54. Plaintiff brings Count II under Nevada law because the assault occurred in Las Vegas, Nevada.

55. Allen intended to cause apprehension of harmful or offensive conduct against Plaintiff when he had sex with Plaintiff without wearing a condom.

56. Allen's actions did, in fact, cause Plaintiff to fear imminent harmful or offensive contact by Allen, i.e. she feared that he would ejaculate inside her without pulling out despite her requests and his promises.

57. As a result of Allen's conduct, Plaintiff suffered damages.

## COUNT III
## INVASION OF PRIVACY: INTRUSION UPON SECLUSION
### (AGAINST JIMMIE ALLEN)

58. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

59. Plaintiff brings Count III under Nevada law because the intrusion upon seclusion occurred in Las Vegas, Nevada.

60. Without her consent, Allen willfully intruded into Plaintiff's privacy by intentionally and surreptitiously filming her in a state of undress and engaged in sexual acts.

61. Intentionally and surreptitiously filming a person in a state of undress and engaged in sexual acts without their consent would be considered highly offensive to a reasonable person and is considered highly offensive to Plaintiff.

62. Allen's conduct was the proximate cause of Plaintiff's privacy being violated.

63. As a result of Allen's conduct, Plaintiff suffered extreme emotional distress and mental anguish.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALLEN)

64. Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

65. Plaintiff brings Count IV under Nevada law because the majority of the intentional infliction of emotional distress occurred in Las Vegas, Nevada.

66. Allen's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

67. Allen's outrageous conduct was not the type of ordinary rude or obnoxious behavior that women should be expected to weather. Rather, Allen's conduct exceeded all possible bounds of decency.

68. Allen acted with intent or recklessness, knowing that Plaintiff was likely to endure emotional distress.

69. Indeed, they used this distress to subdue and explicitly or implicitly threaten Plaintiff to remain silent and to prevent her from complaining or suing based on their actions. They did so with deliberate disregard as to the high possibility that severe emotional distress would occur.

70. Allen's conduct caused suffering for Plaintiff at levels that no reasonable person should have to endure.

## COUNT V
## NEGLIGENT FAILURE TO WARN
## (AGAINST ADT AND HURD)

71. Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

72. Plaintiff brings Count V under Nevada law and/or Tennessee law because the Hurd's negligent failure to warn occurred in Nashville, Tennessee and Las Vegas, Nevada.

73. ADT's employee, Charles Hurd, held himself out to Plaintiff as a federal air marshal whose duty it was to protect citizens of the United States.

74. After accompanying Allen on the flight to Nashville, Hurd followed Plaintiff into the airport, and asked her for her contact information to share with Allen. Hurd did so knowing that Allen wanted her phone number for his own sexual gratification and intended to use deceit to entice her to engage in sexual relations with him.

75. On information and belief, Hurd's knowledge of Allen's history of sexual misconduct extended beyond Plaintiff. As an ADT employee assigned as Allen's bodyguard, Hurd regularly witnessed and assisted Allen in procuring women whom Allen intended to deceive for his sexual gratification.

76. Hurd regularly held himself out as a federal air marshal or in a position of trust to lull unsuspecting female targets of Allen that they could rely on him for protection or otherwise use him to vouch for Allen such that they did not have to worry about sexual assault or surreptitious recording.

77. On information and belief, Hurd participated in the cover-up of assaults or other incidents involving Allen's sexual misconduct targeting women after they occurred.

78. Given Hurd's facilitation of the events between Plaintiff and Allen in Las Vegas, Nevada, and his reassurances to her regarding Allen's character and intentions, Hurd owed Plaintiff a duty to take reasonable protective measures to protect her from the risk of sexual abuse and surreptitious recording by Allen by properly warning Plaintiff about how to avoid such a risk.

11

79. Hurd breached his duty to take reasonable protective measures to protect Plaintiff from the risk of sexual abuse and surreptitious recording by Allen, such as the failure to properly warn Plaintiff about how to avoid such a particular risk that Allen posed.

80. As a direct and/or proximate result of Hurd's actions and/or inactions, Plaintiff was damaged.

81. ADT should be held liable under the doctrine of respondeat superior for Hurd's actions and the harm or injury caused by Hurd's actions because Hurd's acts were committed in the course of the very task assigned to him, i.e. working as Allen's security detail and accompanying him to his public events and during travel, and it was reasonably foreseeable that Hurd would be faced with situations in which Allen was engaged in sexual misconduct given the nature and scope of his employment.

## COUNT VI
## NEGLIGENT HIRING, RETENTION, OR SUPERVISION
## (AGAINST ADT)

82. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

83. Plaintiff brings Count VI under Tennessee law because ADT hired, retained, and supervised Hurd in or from Tennessee.

84. ADT had a duty to protect Plaintiff from harm resulting from its employment of Hurd.

85. ADT breached that duty by hiring or retaining, or failing to train, supervise, or discipline Hurd for facilitating and/or covering up Allen's sexual abuse and misconduct.

86. As ADT's employee, Hurd committed one or more wrongful acts that were the proximate cause of Plaintiff's injuries, including but not limited to vouching for Allen's character and his intentions towards Plaintiff, assuring Plaintiff that he and Allen would get her a

12

separate hotel room when they had no intention of doing so, and providing assurance to Plaintiff through actions and words that she would be safe if she accompanied he and Allen to Allen's hotel room.

87. As a result of the injuries, Plaintiff incurred damages.

## COUNT VII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ADT AND HURD)

88. Plaintiff incorporates by reference all prior paragraphs as if set forth in full herein.

89. Plaintiff brings Count VII under Nevada law because the acts which give rise to Plaintiff's emotional distress occurred in Nevada.

90. Hurd's conduct negligently caused emotional distress to Plaintiff.

91. Hurd could reasonably foresee that their actions would have caused emotional distress to Plaintiff.

92. Hurd conduct caused suffering for Plaintiff at levels that no reasonable person should have to endure.

93. ADT should be held liable under the doctrine of respondeat superior for Hurd's actions and the harm or injury caused by Hurd's actions because Hurd's acts were committed in the course of the very task assigned to him, i.e. working as Allen's security detail and accompanying him to his public events and during travel, and it was reasonably foreseeable that Hurd would be faced with situations in which Allen was engaged in sexual misconduct given the nature and scope of his employment.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff and against Defendants, award her compensatory, incidental, consequential, and punitive damages, award her reasonable attorneys' fees and costs, and grant such other and further relief as this Court deems appropriate.

Dated: June 24, 2024                                JANE DOE 2, Plaintiff

By: /s/ Elizabeth A. Fegan
Elizabeth A. Fegan (admitted *pro hac vice*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

John Spragens
SPRAGENS LAW PLC
311 22nd Ave. N.
Nashville, TN 37203
Ph: (615) 983-8900
Fax: (615) 682-8533
john@spragenslaw.com

*Counsel for Plaintiff*

## VERIFICATION PAGE

I, █████████, declare under penalty of perjury and certify that the statements and allegations outlined in this First Amended Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters, the undersigned certifies as aforesaid that I verily believe the same to be true.

Executed on ___June 19___, 2024           ████████████████

Doc ID: dffb4ff402af06874274e22f23d1fb8d9524f7e0