# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| JANE DOE 2 | ) | |
| | ) | **Case No. 3:23-cv-00582** |
| v. | ) | |
| | ) | |
| JIMMIE ALLEN *et al.* | ) | |

**To: The Honorable Aleta A. Trauger, United States District Judge**

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff Jane Doe 2's "Motion for Damages Resulting from Default Judgment" (Docket No. 87), to which Defendants Jimmie Allen, Aadyn's Dad Touring, Inc. ("ADT"), and Charles Hurd have failed to respond. This motion was referred to the undersigned Magistrate Judge for a report and recommendation. (Docket No. 93.) For the reasons stated below, the undersigned finds that this matter can be resolved without hearing and respectfully recommends that Plaintiff's motion for damages (Docket No. 87) be **GRANTED IN PART**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this litigation against Defendants on June 9, 2023. (Docket No. 1.) She then amended her complaint on July 10, 2024 with leave of Court. (Docket No. 41.) In her complaint, Plaintiff alleges as follows: She met Mr. Allen and Mr. Hurd in May 2022. (*Id.* at ¶ 1.) ADT employed Mr. Hurd as a personal bodyguard and security detail for Mr. Allen, a country music artist. (*Id.* at ¶¶ 13, 18.) After meeting, Plaintiff and Mr. Allen began to communicate regularly via text messaging and FaceTime calls. (*Id.* at ¶ 2.) In July 2022, Plaintiff traveled to Las Vegas to meet Mr. Allen. (*Id.* at ¶ 3.) During this trip, Mr. Allen and Mr. Hurd "enticed" Plaintiff to visit Mr. Allen's hotel room. (*Id.* at ¶ 4.) While in the room, Plaintiff and Mr. Allen engaged in

sexual intercourse, after which Plaintiff discovered that Mr. Allen had recorded their encounter without her consent. (*Id.* at ¶ 5.) In addition, Mr. Allen did not use a condom during their sexual encounter and he ejaculated inside of Plaintiff, despite her request that he not do so. (*Id.*)

Based on these actions, Plaintiff brought the following claims: (1–4) battery, assault, invasion of privacy, and intentional infliction of emotional distress against Mr. Allen; (5) negligent failure to warn against ADT and Mr. Hurd; (6) negligent hiring, retention, or supervision against ADT; and (7) negligent infliction of emotional distress against ADT and Mr. Hurd. (*Id.* at ¶¶ 47–93.)

In response, Mr. Allen and ADT filed an answer in which they largely denied Plaintiff's claims and asserted a counterclaim against Plaintiff for conversion. (Docket No. 58.) On December 5, 2024, the Court dismissed the counterclaim with prejudice. (Docket No. 69.) Mr. Hurd has not participated in this litigation despite Plaintiff filing a notice indicating that he was personally served on October 25, 2023. (Docket No. 33.)

On May 27, 2025, Plaintiff filed a motion for sanctions and judgment against Mr. Allen and ADT. (Docket No. 81.) In her motion, she asked the Court to enter judgment against the two defendants based on their failure to comply with several of the Court's case management and discovery orders and the resulting prejudice to Plaintiff. Neither Mr. Allen nor ADT responded to the motion. Accordingly, on August 18, 2025, the Court granted the motion because it was unopposed and based on the merits of Plaintiff's request. (Docket No. 86.) Accordingly, a default judgment was entered against Mr. Allen for battery, assault, invasion of privacy, intentional infliction of emotional distress, and against ADT for negligent failure to warn, negligent hiring, retention, or supervision, and negligent infliction of emotional distress.

Plaintiff then filed the instant motion for damages on September 8, 2025. (Docket No. 87.) Neither Mr. Allen nor ADT have responded. The Court then referred the motion to the undersigned on April 7, 2026. (Docket No. 93.)

## II. LEGAL STANDARDS AND ANALYSIS

Once default has been entered against a party under Rule 55, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including any jurisdictional averments. *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981); *Antoine*, 66 F.3d at 110–11. Even without this admission, the Court finds that jurisdiction is properly asserted over Mr. Allen and ADT here. Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000. Thus, diversity jurisdiction exists under 28 U.S.C. § 1332.

Due to Mr. Allen and ADT's default, the Court is entitled to accept as true the well-pleaded factual allegations of the complaint. *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020) (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009)). Default is not, however, considered an admission of damages. *Vesligaj*, 331 F. App'x at 355 ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved.").

To determine damages, the trial court can, but is not required to, hold an evidentiary hearing. "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009). *See also* Fed. R. Civ. P. 55(b)(2)(A) (district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A)

conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter"); *Vesligaj*, 331 F. App'x at 354.

In her motion, Plaintiff seeks monetary damages from Mr. Allen and ADT in the amount of $1,790,541.00, which is comprised of the following: (1) $253,142.00 in emotional distress damages, or "pain and suffering"; (2) $3,505.00 in past treatment expenses; (3) $340,200.00 in future treatment expenses; and (4) and $1,193,694.00 in punitive damages. (Docket No. 88.) Plaintiff also seeks an award of post judgment interest "at the rate mandated by 28 U.S.C. § 1961." The Court finds that a hearing is not necessary to determine Plaintiff's damages. Accordingly, the Court will address each category of damages below.

1.      **<u>Emotional Distress Damages</u>**

To support her request for emotional distress damages, Plaintiff submitted the following: the declaration of Stephanie J. Christl, a "nationally certified health and wellness coach specializing in trauma and brain spotting" who treated Plaintiff following the incident described in the complaint (Docket No. 88-1); deposition testimony from fact witnesses regarding Plaintiff's emotional state (Docket No. 90 at Exs. B, D); deposition testimony from Ms. Christl (*id.* at Ex. L); and a summary report of Plaintiff's condition prepared by Ms. Christl (*id.* at Ex. N).

Plaintiff states that she experienced trauma from the incident described in the complaint, which has led to her becoming "emotionally distraught, anxious, unfocused at work, and disconnected from friends and family" and to her seeking professional help from Ms. Christl. (Docket No. 88 at 8.) In her affidavit and summary report, Ms. Christl states that Plaintiff has experienced numerous symptoms of post-traumatic stress disorder as a result of the incident. (Docket No. 88-1 at ¶ 5; Docket No. 90 at Ex. N.) To further support her request, Plaintiff points to similar cases involving "invasion of privacy and video voyeurism" in which other plaintiffs

4

were awarded "significant" compensatory damages. (Docket No. 88 at 9 (citing Docket No. 90 at Exs. O, P, Q, R).)

The undersigned finds that Plaintiff has explained the circumstances of her injuries in reasonable detail, demonstrating that she is entitled to the emotional distress damages that she seeks. Accordingly, the undersigned recommends that Plaintiff's request for $253,142.00 in emotional distress damages be granted.

**2.      Past Treatment Expenses**

To support her request for damages for expenses paid for past treatment, Plaintiff submitted Ms. Christl's declaration (Docket No. 88-1); Ms. Christl's deposition transcript (Docket No. 90 at Ex. L); a statement from Ms. Christl of the dates and hours of Plaintiff's therapy sessions (*id.* at Ex. M); and a statement of charges to Plaintiff for mental health treatment from Advanced Psychiatry (*id.* at Ex. S). These documents indicate that Plaintiff paid $3,450.00 for counseling from Ms. Christl and $55.00 for counseling from Advanced Psychiatry, all of which was related to the incident described in the complaint.

The undersigned finds that Plaintiff has demonstrated that she is entitled to past treatment expenses in the amount she seeks. Accordingly, the undersigned recommends that Plaintiff's request for $3,505.00 in past treatment expenses be granted.

**3.      Future Treatment Expenses**

To support her request for damages for expenses paid for future treatment, Plaintiff submitted Ms. Christl's declaration (Docket No. 88-1) and Ms. Christl's deposition transcript (Docket No. 90 at Ex. L). In her declaration, Ms. Christl recommends that Plaintiff continue to receive individual trauma therapy and family or couples' therapy for several years.

The undersigned finds that Plaintiff has demonstrated that she is entitled to future treatment expenses in the amount she seeks. Accordingly, the undersigned recommends that Plaintiff's request for $340,200.00 in future treatment expenses be granted.

**4.      Punitive Damages**

To support her request for punitive damages, Plaintiff submitted Ms. Christl's declaration (Docket No. 88-1). She argues that Mr. Allen's and ADT's "predatory conduct" is not the kind tolerated in a civilized society and resulted in serious emotional and psychological injury to Plaintiff. She points to similar cases involving "invasion of privacy and video voyeurism" in which other plaintiffs were awarded punitive damages ranging from $15,000 to $2,000,000. (Docket No. 88 at 14 (citing Docket No. 90 at Exs. O, P, Q, R).) Accordingly, she asks the Court to award her $1,193,694.00 in punitive damages – which is twice the amount of her compensatory damages – to deter Mr. Allen and ADT from such conduct in the future and redress the wrongs to her.

Under Tennessee law, after the fact finder determines that a defendant is liable for punitive damages, "the fact finder shall consider, to the extent relevant, at least the following" in determining the appropriate amount of punitive damages:

(1)      The defendant's financial affairs, financial condition, and net worth;

(2)      The nature and reprehensibility of defendant's wrongdoing, for example
(A)      The impact of defendant's conduct on the plaintiff, or
(B)      The relationship of defendant to plaintiff;

(3)      The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;

(4)      The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;

(5)      The expense plaintiff has borne in the attempt to recover the losses;

6

(6)     Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;

(7)     Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;

(8)     Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and

(9)     Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Pruett v. Skouteris*, 743 F. Supp. 2d 718, 728 (W.D. Tenn. 2010) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901–902 (Tenn. 1992)). "[T]he primary purpose of a punitive award is to deter misconduct." *Id.* at 902.

In addition to state law considerations that bear on the question of punitive damages, the United States Supreme Court has noted that an award of punitive damages is subject to constitutional limitations. *Pruett*, 743 F. Supp. 2d at 728. Pursuant to the Due Process Clause of the Fourteenth Amendment, a "grossly excessive punishment" may not be imposed on a tortfeasor. *Id.* at 729 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 562 (1996) (internal quotations omitted)). "The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (internal quotations omitted). To determine the reprehensibility of a defendant's conduct, a court must consider whether:

the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*Id.* at 419.

7

In taking these nine factors into account, the Court finds that the nature and reprehensibility of Mr. Allen's wrongdoing is severe. The evidence shows that Mr. Allen intentionally and surreptitiously filmed his sexual encounter with Plaintiff without her consent, and that he ejaculated inside of Plaintiff without wearing a condom when Plaintiff did not consent to him doing so and asked him not to do so. These intentional acts caused Plaintiff to suffer extreme emotional distress and trauma. However, the Court does not find the same for ADT. Although ADT is being held liable for its negligent failure to warn, negligent hiring, retention, or supervision, and negligent infliction of emotional distress, the Court does not find that its actions were egregious, intentional, or fraudulent such that punitive damages are appropriate.

As for the amount of punitive damages, the Court must consider whether such damages bear a "reasonable relationship" to the compensatory damages awarded. *BMW of N. Am., Inc.*, 517 U.S. at 580. While the Supreme Court has declined "to impose a bright-line ratio which a punitive damages award cannot exceed," it also has stated, "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. Here, Plaintiff asks the Court to award her punitive damages in the amount of $1,193,694.00, which is twice the amount of compensatory damages. The Court finds that this in appropriate amount that has a "reasonable relationship" to the compensatory damages awarded and that amount satisfied due process.

The undersigned finds that Plaintiff has demonstrated that she is entitled to punitive damages against Mr. Allen in the amount she seeks. Accordingly, the undersigned recommends that Plaintiff's request for $1,193,694.00 in punitive damages be granted as to Mr. Allen, but not as to ADT.

8

**5.** **Post Judgment Interest**

Plaintiff seeks post judgment interest at the rate mandated by 28 U.S.C. § 1961 beginning on the date when final judgment is entered until the date the judgment is paid in full by Mr. Allen and ADT.

The purpose of post judgment interest is to compensate the prevailing plaintiff for the time-value of money lost between the occurrence of damages and a defendant's payment at a later date. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990). Under 28 U.S.C. § 1961(a), post judgment interest must be paid on money awarded by districts courts in civil actions. *Broad Street Energy Co. v. Endeavor Ohio LLC*, No. 2:12-CV-711, 2014 WL 12657033, at *4 (S.D. Ohio Nov. 14, 2014) (citing *O'Sullivan Corp. v. Duro-Last, Inc.*, 7 F. App'x 509, 519 (6th Cir. 2001)). Accordingly, the Court does not have discretion to deny post judgment interest, as it is mandatory. *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002). Further, under 28 U.S.C. § 1961(a), "[s]uch interest shall be calculated from the date of the entry of the judgment at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

Accordingly, the undersigned recommends that Plaintiff's request for post judgment interest at the rate mandated by 28 U.S.C. § 1961 be granted.

### III. CONCLUSION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. Plaintiff's unopposed "Motion for Damages Resulting from Default Judgment" (Docket No. 87) be **GRANTED IN PART**.

2. Plaintiff be awarded compensatory damages of **$596,847.00** assessed against Defendants Jimmie Allen and Aadyn's Dad Towing, Inc., individually and jointly and severally,

comprised of: (a) emotional distress damages of $253,142.00; (b) past treatment expenses of $3,505.00; and (c) future treatment expenses of $340,200.00.

3.      Plaintiff be awarded punitive damages of **$1,193,694.00** against Defendant Jimmie Allen.

4.      Plaintiff be awarded post judgment interest at the applicable statutory rates as set forth above.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. of Civ. P. 72(b)(2), Local R. 72.02(b). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Fed. R. Civ. P. 72(b)(2), Local R. 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

10